**In re SUN–TEL COMMUNICATIONS, INC., Debtor.**

**Bankruptcy No. 84–00315–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

March 12, 1984.

Peter Weintraub, Deerfield Beach, Fla., for debtor.

Wade Byrd, Palm Beach, Fla., for utility.

ORDER ON REVIEW OF UTILITY DEPOSIT

THOMAS C. BRITTON, Bankruptcy Judge.

This chapter 11 debtor's application under 11 U.S.C. § 366(b) for review and modi-

fication of the amount of the utility deposit required of it for continued telephone service was heard on March 6.

The debtor is a reseller of telephone long distance services and, therefore, its telephone bills are substantial. Southern Bell has demanded, under § 366(b), a deposit in the amount of $201,120. This figure represents double the average monthly bill incurred by the debtor during the three months immediately preceding bankruptcy. Bills are rendered monthly and the customer has 20 days to pay the bill.

The debtor proposes that it be furnished service with no deposit or a substantially smaller deposit, because it cannot afford this deposit and because it is confident that it can pay its telephone bills within 20 days after the bills are received from collection of its accounts receivable. The debtor has proffered to prove and I accept, for this purpose, the fact that its net operating income for January was $71,000 and that it has been able to collect 95% of its accounts receivable.

The debtor argues, and I agree, that post-petition operating expenses including telephone bills are entitled to priority consideration in a chapter 11 plan. If this case is converted to a chapter 7 liquidation, that priority is subordinated to the administrative expenses incurred in the liquidation proceeding. The debtor contends that the administrative priority coupled with the debtor's prospects furnish "adequate assurance of payment" and, therefore, no deposit is necessary.

I disagree. The debtor began business nine months ago. It has lost money every month until January, 1984. It incurred a pre-petition bill of over $400,000 before it filed its petition on February 21. It has presented no reorganization plan. The debtor proposes to earn its way out of its current financial embarrassment. The issue is whether Bell South may be compelled to finance that effort.

The debtor urges consideration of the seven part test suggested by my colleague

in Utah. *In re Santa Clara Circuits West, Inc.*, 27 B.R. 680, 685 (Bkrtcy.D.Utah 1982). Judge Clark held that the maximum cash deposit was necessary in that case and his consideration of alternatives and extenuating circumstances was, therefore, largely dicta. I agree that circumstances could justify compelling a utility to furnish service with little or no deposit to assure payment, however, this is clearly not such a case. *Collier on Bankruptcy* (15th ed.) ¶ 366.03; *Matter of Security Investment Properties, Inc.*, 559 F.2d 1321 (5th Cir. 1977).

I have not overlooked the debtor's contention that its present difficulties are largely due to Southern Bell's allegedly improper interruption of its business based upon erroneous and untimely billings. The debtor estimates its damages at $235,000. However, this cause of action has neither been asserted nor established. Until it is, it affords no basis for relief against the utility and no predicate for relief under § 366(b).

The deposit demanded by Southern Bell is reduced to $167,600, as announced at the close of the hearing on March 6, and the utility is authorized to discontinue service if the deposit is not made on or before March 16.

If the deposit is made, the utility is expressly authorized to discontinue service to this debtor on the 20th day after it renders any invoice unless it has received payment in cash or by cashier's check of the invoice by that date.